IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 20, 2019

**STATE OF TENNESSEE v. GEREMY PAUL MATHIS**

**Appeal from the Circuit Court for Coffee County**
**No. 40880     L. Craig Johnson, Judge**

————————————————————

**No. M2018-01139-CCA-R3-CD**

————————————————————

A Coffee County jury convicted the Defendant, Geremy Paul Mathis, of felony failure to appear, and the trial court sentenced him to three and a half years in confinement. On appeal, the Defendant asserts that: (1) the trial court improperly admitted his prior convictions; (2) the evidence is insufficient to support his conviction; and (3) the trial court abused its discretion when sentencing him to serve three and a half years in confinement. After review, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which J. ROSS DYER, J., joined. NORMA MCGEE OGLE, J., concurring in results only.

Christopher R. Stanford, Manchester, Tennessee, for the appellant, Geremy Paul Mathis.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; C. Craig Northcott, District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from the Defendant's failure to appear to a court summons related to a felony offense. A Coffee County grand jury indicted the Defendant on felony failure to appear based upon his absence from court on December 12, 2013. At trial, the parties presented the following evidence: On December 1, 2013, Tullahoma Police Department Officer George Dodson stopped a vehicle based upon a traffic violation. During the course of the stop, Officer Dodson developed probable cause that the Defendant, the passenger in the vehicle, was engaged in a separate felony crime. As a result, Officer Dodson obtained a warrant that he served on the Defendant. At that time, he advised the

Defendant about his initial court date for the charge on December 12, 2013, and the bond. The warrant was introduced into evidence.

Kim Thomas, a General Sessions Circuit Court Clerk's Office employee, explained that employees from the Clerk's office attend court and document who attends based upon the court docket. These records are maintained by the Clerk's Office. Based on the court records, Ms. Thomas confirmed that the Defendant's case was docketed for December 12, 2013, but that the Defendant did not appear in court. As a result, the trial court ordered "a forfeiture with no bond."

Neither Officer Dodson nor Ms. Thomas were in the courtroom on the day the Defendant was alleged to have failed to appear to his court summons. Benjamin Fugerer, employed by Freebird Bail Bonds, testified that he was present in court on December 12, 2013. Mr. Fugerer confirmed that the Defendant was his client. Freebird Bail Bonds had posted the Defendant's bond on December 1, 2013, for a felony charge. When Mr. Fugerer posted the bond for the Defendant, he told the Defendant to be in court on December 12, 2013, at 9:00 a.m. Mr. Fugerer was in the general sessions courtroom on December 12 by 9:00 a.m. and present for the docket call. Mr. Fugerer testified that the Defendant was not present during the docket call and, to his knowledge, did not appear at any time in court on December 12, 2013. The trial court issued a forfeiture, and the prosecutor instructed Mr. Fugerer to obtain a failure to appear warrant and serve the Defendant.

Mr. Furgerer obtained the warrant and found the Defendant at around 3:00 p.m. in Tullahoma, "close to Dossett Apartments." The Defendant told Mr. Furgerer that "he was running late to court." The Defendant offered no other explanation for his absence. Mr. Furgerer transported the Defendant to jail. While at the jail, the Defendant told Mr. Furgerer that he was concerned that his bond would be revoked if he had shown up in court.

During a jury out hearing, after the Defendant indicated that he would testify, the State informed the trial court of its intent to use five prior felony convictions for impeachment purposes and "to demonstrate [the Defendant] knows the court process and that he knows to be in court and how that works, and . . . he's not unfamiliar with the system." The State sought to use a 2005 Community Supervision for Life violation, a 2006 Sex Offender Registry violation, a 2011 Community Supervision for Life violation, a 1994 rape conviction, and the felony case for which the Defendant failed to appear. The Defendant asserted that the introduction of the convictions would unfairly prejudice him. The trial court considered whether the probative value of the convictions outweighed the prejudicial effect and found that the introduction of prior unnamed felonies was admissible to show that the Defendant had prior court experience and was

familiar with court proceedings. The trial court limited the State's questions by ordering the State to reference the offenses generally as felony offenses rather than the specific offense such as rape.

The Defendant testified that he spent the night at "Mandy's house" "over by Dossett" on the night before his court date. He got up at 7:15 a.m., called "his ride" and began preparing to leave the house. On the way to the court house, the car "made some loud noise" where "the dumpsters are between Tullahoma and Manchester." The Defendant said that he exited the car and found that "the front bumper had come up under the car and was dragging at the bottom of the car." The Defendant called the clerk's office to notify the court of the "car trouble." According to the Defendant, the clerk told the Defendant, "it was okay, to make sure [you] show up today."

The Defendant testified that he contacted a friend, Jerry Baker, to fix the car but after waiting for an hour to an hour and a half for Mr. Baker to arrive, he "got back into the car and drove to [Mr. Baker's] house." He knocked on Mr. Baker's front door and learned from Mr. Baker's wife that he "was in bed still." The Defendant said that he told Mr. Baker he needed to be in court and had to have the car fixed. Mr. Baker told the Defendant to go "in the garage" and fix it, so the Defendant used "zip ties" to "tie the bumper up."

With the intention to still go to court, the Defendant returned to "Mandy's house" to clean up after working on the car. When he exited the bathroom, Mr. Fugerer was there. The Defendant explained to Mr. Fugerer that he was late but on his way to court, and Mr. Fugerer drove him to jail.

On cross-examination, the Defendant testified that he knew about the December 12, 2013 court date and that he was to be in court at 9:00 a.m. He agreed that he was not in court on that date. He stated that he did not know the name of the clerk he spoke to on the phone about his delay due to car trouble. The Defendant confirmed that he was familiar with the court system based upon felony convictions accrued over the past twenty years. He confirmed the years he received each of five felony convictions.

Based upon this evidence, the jury convicted the Defendant of felony failure to appear. At a subsequent sentencing hearing, the State submitted the presentence report and asked that the trial court sentence the Defendant as a Range II, multiple offender for the Class E felony failure to appear conviction. The State noted that the presentence report indicated that the Defendant had five prior felony convictions and seventeen misdemeanor convictions, although only four of the prior felony convictions qualified as a basis for sentencing the Defendant as a multiple offender. The State advised the trial court that the Defendant had been arrested four times since the arrest for the failure to

appear charge. Finally, the State argued that, based upon the Defendant's criminal history and failed attempts to serve alternative sentences, the trial court should sentence the Defendant to serve four years in the Department of Correction.

The Defendant conceded that he qualified as a Range II, multiple offender but asked the trial court to consider, in mitigation, the Defendant's difficult childhood, drug use at a young age, the Defendant's need for drug treatment, the Defendant's minor children, and that no one suffered serious bodily injury due to his criminal conduct in this case. The Defendant also asserted that there was a reasonable excuse for his absence from court and that the crime was committed under unusual circumstances that did not exhibit a sustained attempt to violate the law. The Defendant requested an alternative sentence involving drug treatment and supervised probation.

In a written order, the trial court sentenced the Defendant to three and a half years in confinement. The order stated that the trial court had considered the evidence presented at the trial and at the sentencing hearing, the presentence report, the principles of sentencing and arguments related to sentencing alternatives, the nature of the criminal conduct, the mitigating and enhancement factors argued by the parties, statistical information provided by the Administrative Office of the Courts, and the Defendant's potential for rehabilitation.

The trial court found applicable: enhancement factor (1), the Defendant's extensive criminal history; enhancement factor (8), the Defendant's failure to comply with conditions of a sentence involving release in the community; and enhancement factor (13), the Defendant was released on bail at the time he committed the failure to appear. T.C.A. § 40-35-114. The trial court also found applicable: mitigating factor (1), that the Defendant's conduct did not cause or threaten serious bodily injury; and (13) the Defendant's troubled childhood that resulted in addiction problems. T.C.A. § 40-35-113.

The trial court, in denying an alternative sentence, considered the Defendant's lengthy criminal history, the Defendant's lack of potential for rehabilitation, his past failed attempts at probation conditions, and the risk of future criminal conduct was great. Based upon these considerations, the trial court ordered the Defendant to serve three and a half years in the Department of Correction. It is from this judgment that the Defendant appeals.

## II. Analysis

On appeal, the Defendant asserts that: (1) the trial court improperly admitted his prior convictions; (2) the evidence is insufficient to support his conviction; and (3) the trial court abused its discretion when sentencing him to serve three and a half years in confinement.

## A. Admission of Prior Convictions

The Defendant asserts that the trial court violated Tennessee Rule of Evidence 609(a), when he allowed the State to question him about five prior felony convictions. The State responds that the State did not offer the prior convictions for impeachment purposes, but to establish intent and absence of mistake by showing that the Defendant was familiar with the court system and knew the importance of appearing for court. The State asserts that, because the State did not use the prior conviction for impeachment purposes, the trial court properly admitted the convictions pursuant Tennessee Rule of Evidence 404(b). We agree with the State.

Tennessee Rule of Evidence 609 provides that the credibility of a defendant may be attacked by presenting evidence of prior convictions if certain conditions are met. In this case, however, the record is clear that the State sought to show intent and absence of mistake by showing the Defendant's familiarity with the court system. As such, we agree with the State that the applicable rule in this case is Tennessee Rule of Evidence 404(b). Because the convictions were not used for impeachment purposes, Tennessee Rule of Evidence 609 is not applicable, and the Defendant is not entitled to relief on that basis.

Our review of the record reveals that the trial court complied with the requirements of Tennessee Rule of Evidence 404(b) in admitting the convictions. Relevant evidence is admissible unless "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 402, 403. Rule of Evidence 404 prohibits evidence of other crimes, wrongs, or acts offered to show a character trait in order to prove that a defendant acted in conformity with that character trait. Tenn. R. Evid. 404(b). The trial court may admit the evidence for non-character purposes if four conditions are met:

(1) The court upon request must hold a hearing outside the jury's presence;

(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;

(3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and

(4) The court must exclude the evidence if its probative value is outweighed
by the danger of unfair prejudice.

Tenn. R. Evid. 404(b). If a trial court "substantially complies" with these requirements, this court will review for an abuse of discretion. *State v. McCary*, 119 S.W.3d 226, 244 (Tenn.Crim.App.2003) (citing *State v. DuBose*, 953 S.W.2d 649, 652 (Tenn.1997)). If the evidence sought to be admitted is relevant to an issue other than the accused's character, such as identity, motive, common scheme, intent, or rebuttal of accident or mistake, it may be admitted for that purpose so long as the danger of unfair prejudice does not outweigh the probative value. Tenn. R. Evid. 404(b), Advisory Comm'n Cmts.; *McCary*, 119 S.W.3d at 243.

In this case, the trial court held a hearing outside the presence of the jury where both parties made arguments as to the admissibility of the Defendant's five prior felony convictions. The trial court found, on the record, that the material issue warranting admission of the convictions was proving the required *mens rea* based upon the Defendant's prior court experience. Although the trial court did not specifically address the State's proof as to the prior convictions, it implicitly found the convictions submitted by the State were valid convictions. The trial court found that the probative value of the convictions outweighed the prejudicial effect and allowed the State to question the Defendant about his prior convictions without naming the specific offense. The trial court substantially complied with the requirements of Rule 404(b) and, therefore, we review under an abuse of discretion standard. In our view, the trial court did not abuse its discretion in admitting the convictions. The State is required to prove that the Defendant acted "knowingly" as an element of the offense of failure to appear and the evidence presented at trial regarding the Defendant's *mens rea* was not so overwhelming as to make the convictions "needless." *See* Tenn. R. Evid 403. The Defendant is not entitled to relief on this issue.

## B. Sufficiency of the Evidence

The Defendant argues that the evidence is insufficient to support his conviction. Specifically, he contends that he presented evidence of his lack of transportation as a reasonable excuse for his failure to appear, and the State failed to rebut this testimony. The State responds that the evidence is more than sufficient to sustain his conviction. We agree.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "*any* rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citing *State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990)). In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973). "The jury decides the weight to be given to circumstantial evidence, and '[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (quoting *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958)). "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999) (citing *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956)). "Questions concerning the credibility of witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523, 527 (Tenn. 1963)). This Court must afford the State of Tennessee the "'strongest legitimate view of the evidence'" contained in the record, as well as "'all reasonable and legitimate inferences'" that may be drawn from the evidence. *Goodwin*, 143 S.W.3d at

775 (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000) (citations omitted).

The Defendant was convicted of a violation of Tennessee Code Annotated section 39-16-609, which provides that "[i]t is unlawful for any person to knowingly fail to appear as directed by a lawful authority if the person . . . [h]as been lawfully released from custody, with or without bail, on condition of subsequent appearance at an official proceeding . . . at a specified time or place[.]" T.C.A. § 39-16-609(a)(4) (2014). The statute further provides: "It is a defense to prosecution under this section that . . . [t]he person had a reasonable excuse for failure to appear at the specified time and place." *Id*. § 39-16-609(b)(2).

The evidence, considered in the light most favorable to the State, showed that the Defendant was told by Officer Dodson and Mr. Fugerer about the December 12, 2013 court date. The Defendant testified that he knew he was to be in court on December 12, 2013, at 9:00 a.m. and that he was not present. The Defendant was released on bail on condition of his appearance at the December 12, 2013 court appearance. The Defendant testified about his absence from court due to the bumper of a borrowed car dragging the pavement, his hour and half wait for Mr. Baker to repair the car before driving to Mr. Baker's house and repairing the car by himself. The jury heard this testimony as well as Mr. Fugerer's testimony that the Defendant made no mention of car difficulty when he apprehended the Defendant at 3:00 p.m. in the afternoon. The Defendant only mentioned that he was late. By its verdict, the jury concluded that the Defendant's reason for not appearing was not reasonable. All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, not the appellate courts. *See State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987).

Accordingly, we conclude that a rationale jury could find, beyond a reasonable doubt that the Defendant knowingly failed to appear at an official proceeding as directed by a lawful authority when he was "lawfully released from custody, with or without bail, on condition of subsequent appearance at an official proceeding . . . at a specified time or place." T.C.A. § 39-16-609(a)(4). The Defendant is not entitled to relief.

### C. Sentencing

The Defendant asserts that his sentence is excessive in light of the circumstances in this case and that the trial court did not give sufficient weight to the applicable

mitigating factors or his request for drug rehabilitation. The State responds that the Defendant has failed to establish the impropriety of his sentence.

Appellate review of sentences is under the abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 708 (2012); *see also State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)).

To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id.*; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). In the context of sentencing, as long as the trial court places the sentence within the appropriate range and properly applies the purposes and principles of the Sentencing Act, this court must presume the sentence to be reasonable. *Bise*, at 704-07. As the *Bise* Court stated, "[a] sentence should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 708. We are also to recognize that the defendant bears "the burden of showing that the sentence is improper." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. *See* T.C.A. § 40-35-210 (2014); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001).

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

(1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

> (2) The sentence length within the range should be adjusted, as appropriate,
> by the presence or absence of mitigating and enhancement factors set out in
> §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210(c) (2014).

Although the trial court should also consider enhancement and mitigating factors, these factors are advisory only. *See* T.C.A. § 40-35-114 (2012); *see also Bise*, 380 S.W.3d at 699 n.33, 704; *State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008). We note that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." *Carter*, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *Id.* at 343. A trial court's "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706. "[Appellate Courts are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Carter*, 254 S.W.3d at 346.

In determining the Defendant's sentence the trial court considered the evidence from trial and the sentencing hearing, the presentence report, the principles of sentencing and arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct involved, argument related to mitigating and enhancement factors, and statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee. The trial court sentenced the Defendant as a Range II, multiple offender for a Class E felony, failure to appear conviction. A Range II sentence for a Class E felony is between two and four years. The trial court ordered a sentence of three and a half years.

The trial court found applicable enhancement factors (1), (8), and (13). The Defendant does not contest the enhancement factors but argues that the trial court did not give "sufficient weight to mitigating factors (1), that the conduct did not cause or threaten serious bodily injury; and (13) the Defendant's troubled childhood that resulted in addiction problems. T.C.A. § 40-35-113.

The record in this case shows that the trial court considered the principles and purposes of sentencing and imposed a sentence within the applicable range. As to the Defendant's claim that the trial court did not give sufficient weight to mitigating factors, as we stated above, the claim that a trial court improperly weighed the enhancement and

mitigating factors is no longer a ground for appeal. *Carter*, 254 S.W.3d at 344. The record evinces that the trial court considered and then stated on the record the enhancement and mitigating factors considered and the reasons for imposing the sentence. The trial court did not abuse its discretion by imposing the within range sentence of three and a half years.

The Defendant argues that the crime "did not involve severe or brutal circumstances" and that the trial court did not give "any regard to his request for drug rehabilitation." Our review, however, showed that he trial court specifically considered and applied mitigating factor (1), that the Defendant's conduct did not cause serious bodily injury. Likewise, the trial court specifically acknowledged the Defendant's difficult childhood and its contribution to his current drug issues, but it ordered incarceration due to concern over the Defendant's pattern of failed attempts at alternative sentencing. The Defendant is not entitled to relief.

### III. Conclusion

Based on the foregoing authorities and reasoning, we affirm the trial court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE

- 11 -